TURNER BROTHERS ET AL.

# ALABAMA MINING AND MANUFACTURING COMPANY ET AL.

*Foreign Corporations—Bill by Creditors to Charge Resident Stockholders on Unpaid Subscriptions for Stock—Requisites—Parties—Jurisdiction—Attachment and Garnishment—Secret Agreement—Fraud—Trusts—* Res Adjudicata.

1. The subscriber for capital stock of a corporation does not, as such, sustain any direct trust relation to its creditors, but is simply and solely its debtor.

2. Where a creditor of a corporation merely seeks to reach indebtedness due it on supscriptions for stock without winding up its affairs, he is only required to bring into court the corporation and the stockholders whose indebtedness he seeks to reach.

3. Before a creditor of a foreign corporation can maintain a bill in this State to reach indebtedness due it on subscription for stock, he must exhaust his remedy at law by obtaining a domestic judgment, and having execution returned unsatisfied.

4. Where resident stockholders of a foreign corporation are legally liable to it on their stock subscriptions, it seems that its creditors may proceed at law by attachment and garnishment, although service on the corporation can not be had. It also seems that a secret agreement between the corporation and its stockholders, releasing them from further assessments, will not bar a recovery in such a proceeding. especially when the agreement has been declared void in a former adjudication.

[Opinion filed June 14, 1887.]

APPEAL from the Circuit Court of Adams County; the Hon. WILLIAM MARSH, Judge, presiding.

Mr. WILLIAM H. BENNESON, for appellants.

The capital stock and all other property of a corporation is a trust fund, pledged and held in trust, primarily, for the payment of its debts, and secondly, for ultimate distribution to its stockholders, and on this fund the creditors of the corporation have an equitable lien and prior rights of payment thereto paramount to any liens or claims of the stockholders thereon and this fund may be pursued by the creditors into whosesoever hands it may come, other than in the hands of a *bona fide* purchaser. Thompson's Liability of Stockholders, Sec. 10, and cases there cited; 2 Story's Eq. Jur., Sec. 1252, and cases there cited; Curry v. Woodward, 53 Ala. R. 371; Clapp v. Peterson, 104 Ill. 26; Tinkham v. Borst, 31 Barb. (N. Y.) 407; Sanger v. Upton, 91 U. S. S. C. R. 56; Hatch v. Dana, 101 U. S. S. C. R. 205; Union Ins. v. Frear Manufacturing Co., 97 Ill. 537.

The capital stock of a corporation embraces all subscriptions for its stock, whether the same are paid into the treasury of

the corporation or not; and the subscription money remaining unpaid, in the hands of the subscribing stockholder, forms a part of the aforesaid trust fund, subject to the like equities and trusts as that paid in. Thompson's Liability of Stockholders, Sec. 11, and cases there cited; Allen v. Montgomery R. Co., 11 Ala. R. 437; Alder v. Milwaukee Pat. Brick Co., 13 Wis. R. 57; Union Ins. Co. v. Frear Manufacturing Co., 97 Ill. 537; Ogilvie v. Knox Ins. Co. et al., 22 Howard (U. S.), 380.

So far as any of such trust fund consists of unpaid subscription money remaining in the hands of the subscribing stockholder, it can be reached, directly, by the creditors of the corporation through a court of equity and applied in payment of their claims against the corporation, and this remedy will be awarded, by a court of equity, when the creditor is unable to obtain satisfaction in the ordinary mode, and the directors of the corporation refuse or neglect to make and enforce assessments against the delinquent stockholders. In such case the jurisdiction of equity is exclusive. 2 Story's Eq. Juris., Secs. 962, 963, 1252, and cases cited; Thompson's Liability of Stockholders, Secs. 12, 13, 14, 15 and 258, and cases cited.

While it is a general rule that a judgment at law against the debtor and in favor of the creditor, upon the claim sought to be enforced by a creditor's bill, is a prerequisite to the filing of the bill, the rule is far from being universal, and it is dispensed with in divers classes of cases as:

*First.* When the creditor's claim is to be satisfied out of a fund which is accessible only by the aid of a court of equity, the rule will be dispensed with. Russell v. Clark's Ex., 7 Cranch, 69; O'Brien v. Coulter, 2 Blackf. 421; Tinkham v. Borst, 31 Barb. 407.

*Second.* Where a debtor, primarily liable, is entitled to indemnity from another, equity will enforce the claim at the suit of the creditor against the party ultimately liable, treating it as a trust, and no such judgment is requisite; and this is so when the debtor is solvent, *a fortiori* when he is insolvent. 2 Story's Eq. Jur., Secs. 1250 and 1251; Riddle v. Mandeville, 5 Cranch, 322; Russell v. Clark's Ex., 7 Cranch, 60; McCall v.

Harrison, 1 Brock. Cir. 126; Buck v. Swasey, 35 Maine, 52; Anon., 1 Vernon, 162.

*Third.* Where the debtor is so situated that no service of common law process can be made on him, and no judgment at law can be obtained against him, such judgment is not requisite. Scott v. McMillan, 1 Little, 302; Anderson v. Bradford, 5 J. J. Marsh, 73.

*Fourth.* When no lien could be created by such judgment or by an execution issued thereon, upon the property or thing sought to be reached by the bill to satisfy the creditor's claim, no such judgment is requisite.

When the object of the creditor's bill is simply to collect a debt of a corporation to the creditor, out of the unpaid stock of a corporation, it is not requisite that all the creditors should be made complainants, nor that all the stockholders should be made defendants. Ogilvie v. Knox Ins. Co., 22 How. (U. S.) R. 380; Hatch v. Dana, 101 U. S. S. C. R. 205.

No right of action accrues to a corporation, against its stockholders for unpaid stock, payable on call, till a call for the same has been made by it. But when the corporation is insolvent, and no such call has been made by the corporation, a right of action accrues to the creditors of the corporation against such holders of unpaid stock, upon a call or demand upon them by the creditors, and the bringing of a suit by the creditors is a sufficient and timely call to sustain the action. Lamar Ins. Co. v. Moon, 84 Ill. 575; Thompson's Liability of Stockholders, Secs. 15 and 119; Curry v. Woodward, 53 Ala. R. 371; Hatch v. Dana, 101 U. S. 205.

Under the laws of Illinois the process of its common law courts, in ordinary common law suits, can not be served on a defendant outside of the limits of the State, and the attachment laws of the State confer no jurisdiction upon its common law courts when the defendant in attachment has no property within the State, either in his own hands or in the hands of another, susceptible of being levied upon and taken in execution, nor is any debtor within the State, liable to him on a claim recoverable at law. R. S. 1874, Chap. 110 (Practice Act) Sec. 2; May v. Baker, 15 Ill. 89; Thormeyer v. Sisson, 83

Ill. 188; Clymore v. Williams, 77 Ill. 618; Samuel v. Agnew, 80 Ill. 553.

A foreign corporation that does no business in Illinois, and has no office or local agent there for the transaction of business, is outside of the ordinary jurisdiction of the common law courts of the State, and no process issuing from such court, in ordinary common law suits, can be served upon it. Midland Pacific R. R. v. McDermid, 91 Ill. 170; Angell & Ames on Corporations, page 64, Sec. 5; p. 97, Sec. 2.

Mr. WILLIAM W. BERRY, for John Schmidt, appellee.

Messrs. CARTER & GOVERT and J. SIBLEY, for Rupp Brothers and Deuerlein, appellees.

This proceeding amounts simply to an ordinary creditor's bill to reach assets of the corporation in the hands of third parties, not subject to levy and sale upon an execution against the company. It is an effort on the part of the creditors to reach the equitable estate of the corporation before reducing their claims to judgment and the issuance of execution upon the judgment, where an execution could rightfully issue. At the very threshold of the case, we meet an insuperable obstacle to any relief in a court of equity. For the very ground of equity jurisdiction in such cases is, that the creditor must first have exhausted his remedy at law against the debtor, by reducing his debt to judgment and obtaining an execution previous to resorting to a court of equity to reach the equitable assets of the debtor in the hands of a third party. This, as a general proposition, may be admitted, but can not be denied. Hence, until the complainants have exhausted their remedy at law by first obtaining a judgment and execution against the Alabama Mining and Manufacturing Company returned unsatisfied, they have no standing in a court of equity. Manchester v. McKee, 4 Gil. 511; Ishmael v. Parker, 13 Ill. 324; Greenway v. Thomas, 14 Ill. 271; Bigelow v. Andress, 31 Ill. 322; Steere v. Hoagland, 39 Ill. 264; McConnel v. Dickson, 43 Ill. 99; Dewey v. Eckert, 62 Ill. 218; Patterson v. Lynde, 112 Ill. 196; Payne v. Sheldon, 63 Barb. 169; Dunlevy et al. v.

Talmadge, 32 N. Y. 457; Wiggins v. Armstrong, 2 Johns. Ch. 144.

The judgment must be a domestic one upon which an execution can issue in this State, and it is therefore held that a judgment obtained in the Federal Court even is to be treated as a foreign judgment for this purpose and is not such a judgment as to give a court of equity jurisdiction to grant relief to the creditor. Tarbill v. Griggs, 3 Paige, 207; McLeeme v. Bencan, 2 Ired. Eq. 513; Davis v. Dean, 26 N. J. Eq. 436; Furnard v. Harris, 11 S. & M. 366; McElmoyle v. Cohen, 13 Pet. 312; Steere v. Hoagland, 39 Ill. 264; Patterson v. Lyne, 112 Ill. 196; Freeman on Executions, Secs, 427–428.

PLEASANTS, P. J.  The bill herein having been dismissed on demurrer thereto by the individual defendants, the sole question here is upon its sufficiency.  Appellants filed it as creditors of the defendant company, on behalf of themselves and all others in like case who should join therein, against the corporation and certain of its stockholders, to reach balances alleged to be due it for stock subscribed for, issued to and still held by them respectively.  It is a purely foreign corporation that never did any business or had any office or agent in Illinois, and when the bill was filed had ceased to do any or to have any office, officer, agent, employe, stockholders or debtors, or any books, papers or property of any kind in Alabama, where it was incorporated, and was unable to pay its debts without resorting to those balances, which it had hitherto neglected to do, but was still in existence.  Complainants respectively had there obtained judgments, or money decrees, against it, on which executions were issued and returned *nulla bona*, but none here.  The defendant stockholders, from a time prior to its organization, continuously resided and still reside at Quincy, Illinois.  When they subscribed for their stock they made an agreement with the company, unknown to complainants when its indebtedness to them was contracted, by which only a small percentage of the amount subscribed for the shares issued to them was to be paid or called for, and this percentage was paid by them, but the balance of their sub-

scriptions is much more than enough to satisfy all the claims of complainants.

It is declared by the act of incorporation that "any person subscribing for or owning stock in said company shall be liable for the debts and liabilities of the company in proportion to the amount of their stock." This liability rests as well upon those who have, as upon those who have not, fully paid for their stock, and is not what is here sought to be enforced. The bill expressly avers that "no redress is sought upon the statutory liabilities of the stockholders of said company created by its charter; that the sole object of this bill is to reach said unpaid balances on the aforesaid stock, owned and held by said defendant stockholders as aforesaid, and have the same applied in payment of the complainants' said judgment and decree claims." There is nothing in the charter of the company, or any other positive law of Alabama, relating to indebtedness on subscription for stock. It is governed by the general law, which treats it as a trust fund, like other assets of the corporation, for the payment of its debts. 2 Story's Eq. Jur., Sec. 1252; Wood v. Dummer, 3 Mason, 308; Curran v. Arkansas, 15 How. 304; Sawyer v. Hoag, 17 Wall. 610; Sanger v. Upton, 91 U. S. 60; Patterson v. Lynde, 106 U. S. 520; Spear v. Grant, 16 Mass. 505; Bartlett v. Drew, 57 N. Y. 587; Thompson on Liability of Stockholders, Sec. 10.

The principal objections to the bill, urged on demurrer, are the want of necessary parties and of a domestic judgment or decree against the defendants; and the principal authority cited in support of them is Patterson v. Lynde, 112 Ill. 196, in which the demurrer was sustained and the bill dismissed on these grounds.

That case, in most of its features, was singularly like the one at bar, but with these differences: there the domicile of the corporation was in Oregon, and by the Constitution and statute of that State, as had been held by its Supreme Court (in Ladd v. Cartwright, 7 Ore. 329), the liability of the defendant stockholders was for the debts of the corporation *pro rata*, and so enforceable only in equity, where the rights of the corporation and all its creditors and delinquent stockholders

could be adjusted in one suit, and before suit brought they had, at least in form, assigned their stock, so that under the statute they were liable for the balance unpaid by them only in case and to the extent that the assignee had not paid it Neither the other delinquent subscribers nor the assignee of the defendants were made parties.

We do not understand that by the general law or any rule recognized in this State, the creditor of a corporation seeking only to reach indebtedness due it on subscription for stock, and not to wind up its affairs, is in all cases required to bring into court any other than the corporation and its stockholders, whose indebtedness is sought to be reached.   Hatch v. Dana, 101 U. S. 205, and cases there cited ; Patterson v. Lynde, 112 Ill. 196 ; and no objection to this bill, on account of parties or the want of any, is perceived.

An important question, as bearing upon the character of the bill and the jurisdiction of equity, is the relation sustained by the delinquent stock subscriber to the creditors of the corporation.   Appellants claim that as to what is due on the subscription, it is that of a trustee, directly, on the well settled principle that whoever is found in possession of a trust fund, obtained with notice of its character, holds it *cum onere*, and is bound to account therefor, as trustee, to those beneficially interested.   Thompson's Liability of Stockholders, Secs. 13, 10 and 9, and cases cited in notes.   This principle is nowhere more forcibly asserted than by our own Supreme Court in the case of Clapp v. Peterson, 104 Ill. 26, in which it was held to rest upon the reason that the act by which the property or fund is thus obtained is essentially a fraud upon the *cestui que trust.* And even though it be by contract with the trustee, valid as between them and free from actual fraud, if it is clearly injurious to his rights, he may impeach the transaction, pursue the property or fund so far as it can be traced, and except as against an innocent purchaser, subject it to the purposes of the trust.   It also holds, in harmony with all the authorities, that the capital stock of a corporation, or indebtedness for it, is a trust fund for the benefit and security of its creditors, and a stockholder is conclusively chargeable with notice of its char-

acter as such, so that with respect to it he can not be an innocent purchaser. Indeed, while all indebtedness to the corporation, like all its other assets, is a trust fund for that purpose, indebtedness for its capital stock is said to be different from any other in that, and so far as we are aware, only in that it is not subject to set-off of claims due to the debtor from the corporation. Sawyer v. Hoag, 17 Wall. 610.

Notwithstanding all this, however, we hold that the subscriber for capital stock does not, as such, sustain any direct trust relation to the creditors of the corporation, but is simply and solely its debtor. He is not in possession of any thing that is or ever was a part of the trust fund. What he has is a certificate, showing in him a certain amount of the capital stock, with whatever rights and liabilities are incident to it. But this is represented by and consists of his obligation upon his subscription which is said in Patterson v. Lynde, 106 U. S. 520, to be "part of the assets of the corporation, at least so far as creditors are concerned;" and this obligation is in possession of the corporation. The certificate is his own, and rightfully so, as against the creditors. The contract by which he obtained it was not a fraud upon them on his part, nor an abuse of its trust on that of the corporation, as in Clapp v. Peterson, *supra.* His liability and relations, then, must be determined by that contract. It defines and limits them. The promise in terms is not to or for the creditors of the corporation but to the corporation itself, and so, as in other like cases, can be enforced only by or through the other contracting party, the promisee, or its legal representatives. He is simply its debtor and it alone is trustee for its creditors. There is no privity between him and them. So we understand the authorities. Patterson v. Lynde, 106 U. S. 520; Scovill v. Thayer, 105 U. S. 155-6; Hatch v. Dana, 101 U. S. 210; Terry v. Anderson, 95 U. S. 636; Ogilvie v. Knox Ins. Co., 22 How. 380; Patterson v. Lynde, 112 Ill. 196; Hickling v. Wilson, 104 Ill. 54, 63. In these Illinois cases, and in Hatch v. Dana, it is said the creditor of the corporation reaches its debtor not directly as a *cestui que trust* but by subrogation to its rights, in a proceeding in the nature of an equitable attachment, in other

Turner Brothers v. Alabama Mining & Mfg. Co.

words, by a creditor's bill or proceedings supplementary to execution. Thompson on Liability of Stockholders, Sec. 12, and cases cited.

We regard this bill, then, as a proper creditor's bill, seeking to reach certain assets of the complainants' debtor by the aid of a court of equity because they can not reach them at law.

But to do this, the rule is, they must show they have exhausted their remedy at law by obtaining a domestic judgment and having execution thereon returned unsatisfied. Patterson v. Lynde, 112 Ill. 196; Dewey v. Eckert, 62 Ill. 218; Greenway v. Thomas, 14 Ill. 271. The complainants here do not show it.

It is said, however, that there are cases which are exceptions to, or outside of, this rule, and counsel describe four classes of such, each of which is claimed to embrace the one act at bar.

*First.* "Where the creditor's claim is to be satisfied out of a fund which is accessible only by the aid of a court of equity."

The fund here intended must be one not otherwise accessible by the immediate creditor of the party holding it—that is to say, a trust fund in his hands for the benefit of the complainant; as in the cases cited in support of this proposition, which are Russell v. Clark's Ex., 7 Cr. 69; O'Brien v. Coulter, 2 Blackf. 421. See also Beach v. Bestor, 45 Ill. 341. It can not mean the legal credits of the primary debtor, which is the fund here sought. Otherwise the exception would be broader than the rule. The claims of the corporation here are such as would be satisfied, not out of any particular fund, but generally out of the goods and chattels, lands and tenements of the indebted stockholders, which the corporation could reach by execution at law.

*Second.* "Where the debtor primarily liable is entitled to indemnity from another, equity will enforce the claim at the suit of the creditor against the party ultimately liable, treating it as a trust, and no such judgment is requisite."

If we understand this proposition, we suppose the remedy would be not by a creditor's bill, but a bill to enforce the execution of a direct trust, as in the cases last above referred to. A subscriber for stock, however, as we have attempted to show,

is not an indemnitor of the indebted corporation, nor a trustee of its creditor, nor ultimately liable for its debts any more than is its debtor, who is not a stockholder. If the fact that the corporation is insolvent and unable to pay its debts except by resorting to what is due it on subscription for stock may limit its right of recovery against the subscriber to what is required for such payment, it is not because he is an indemnitor, but because as a stockholder he has, as against it, a counter claim for the excess. But to that extent he is simply its debtor, and liable as such like any other.

*Third.* "Where the debtor is so situated that no service of common law process can be had on him and no judgment at law can be obtained against him."

Without now stopping to question or consider the soundness of this statement in all its breadth, we observe it does not embrace the case in hand if, as we think, there is an absolute legal liability on the part of the defendant stockholders to the defendant company upon their subscriptions for stock, for, while its non-residence without an officer or agent within the jurisdiction, would prevent personal service upon it of common law process, the further fact that it had such resident debtors would make it liable to a sufficient judgment by the statutory process of attachment and garnishment.

*Fourth.* "When no lien could be created by such judgment, or by an execution issued thereon, upon the property or thing sought to be reached by the bill to satisfy the creditor's claim."

It is possible we do not apprehend the meaning of counsel in this statement. In no case of a creditor's bill is the preliminary judgment against the primary debtor, or the execution issued thereon, a lien upon his credits or other assets sought to be reached. It is for that reason that the bill in equity is brought, but the judgment and execution are, nevertheless, indispensable requisites to its maintenance.

Then it would seem that the want of a judgment at law of a court of this State, and execution thereon returned unsatisfied, must be fatal to this bill. Such want appears to have been so considered in the case of Patterson v. Lynde, 112 Ill.

196, though the debtor there, as here, was a purely foreign corporation.

But counsel suggest that this might well be said in that case because there was nothing there to hinder a judgment in attachment; that the indebtedness of the stockholders to the company might have been garnisheed and judgment thus obtained against the company; but that it was not so with the indebtedness of these defendant stockholders, because of the secret agreement with the company that it should make no further assessment or call upon their subscriptions; that this agreement was valid as between the parties to it and would bar a recovery by the company; and that the plaintiff in attachment could recover against the garnishees only what was due as between them and the defendant in the attachment.

It is true that in garnishment the issue is upon the indebtedness of the garnishee to the defendant in the attachment, and it follows, as a rule, that a defense which is good as against the defendant, is good also as against the plaintiffs. But the agreement referred to was good in equity as well as at law against the corporation, and so if it would prevent a judgment against the garnishee, why not also a decree upon a creditor's bill? It would, therefore, seem that the rule should not apply to a release which, though valid as against the releasor, is void as to his creditor for whose use the debt so released is sought to be reached. The recovery in garnishee proceedings is on their face as plainly for the use of the plaintiff in attachment as it is for the complainant in a creditor's bill. In both alike it is based on the claim of the primary debtor upon his debtor, and if a court of equity may disregard a release to the latter which would be a fraud upon the complainant, it must be a purely technical and unsubstantial reason that would prevent a court of law from doing the same. The proceeding against a garnishee by attachment, though statutory and in a court of law, is in some sense an equitable one, and the equities of the parties as well as their strict legal rights are taken into consideration. The statute authorizes the attachment of the defendant's claims for the use of the plaintiff, and no defense

by the garnishee which is a fraud upon him should be admitted.    See Crain v. Gould, 46 Ill. 294.

That the secret agreement in this case was void as to creditors of the corporation is alleged in the bill and clear beyond question.    Sanger v. Upton, 91 U. S. 60; Scovill v. Thayer, 105 Ill. 143.    And however it might be before, it could not be interposed as a defense, even at law, after it was judicially so found and declared.    See the case last above cited.    This agreement was substantially so found and declared by the court of last resort in Alabama, in a suit between these same parties, as also appears by the bill.    It shows that these defendant stockholders, having a claim against the corporation secured by trust deed of its land in that State, and having directed the trustee to advertise its sale in default of payment, the complainants here filed their bill in equity against said company, defendant stockholders, trustees and others to enjoin the sale so advertised, and for other relief, on the ground alleged that said defendants respectively were largely indebted to the company on their subscriptions for stock; that the company was indebted to the complainants and without means to pay them except said land and the money so due from said defendants; that it had refused and neglected to call for payments on said unpaid subscriptions, and that said lands were insufficient for that purpose, and, therefore, that it was inequitable to the creditors that the defendant stockholders should appropriate the land to the payment of their claim against the company while they were thus indebted to the company for capital stock in a sum largely exceeding the value of said land and the company's indebtedness to all its creditors other than said defendants.    This bill was contested, all the defendants here appearing by their solicitors.    The court found and declared the amounts due from the corporation to the complainants and from the defendant stockholders to the company respectively, enjoined the sale of the land under the trust deed, ordered it to be sold by its own officer and excluded the defendant stockholders from participation in the proceeds except upon condition that they should first pay into court the amount remaining unpaid on their stock, for the benefit of the creditors of the company.    This decree was affirmed by

the Supreme Court on appeal by the defendants, and the sale was made and proceeds distributed to the other creditors *pro rata*, to the exclusion of the defendant stockholders. The balances remaining unsatisfied by those proceeds are what the complainants are here seeking.

Thus in the interest of other creditors of this corporation was a specific lien, of those defendants upon its property for a valid claim of over $11,000, set aside on the ground that at least so much of what remained unpaid on these subscriptions as was required to satisfy the claims of these creditors was a valid and subsisting indebtedness, notwithstanding the secret agreement of release, and the amount still so required after the application of the proceeds of the land sale has also been judicially ascertained and declared.

We think, upon the authority of Scovill v. Thayer, *supra*, that these proceedings removed whatever hindrance may have previously existed to a recovery at law by the company against the delinquent stock subscribers for the use of these creditors. In substance and effect they amount to a cancellation of the agreement of release to the extent required for their satisfaction, and to a call for that amount so required. Their liability to the company for it was legal and fixed, and it could have been reached and made available to them by garnishment. For a case in point see *In re* Glenn Iron Works, 17 Fed. Rep. 324. There was then no necessity for the intervention of equity, and upon the authority of Patterson v. Lynde, 112 Ill. 196, specifically, and the cases there cited generally, the demurrer was properly sustained. The decree will therefore be affirmed.

*Decree affirmed.*