H. OLIN YOUNG *et al.*

*v.*

JOHN V. FARWELL.

*Filed at Ottawa October 31, 1891.*

1. STOCKHOLDERS—*liability to creditors—right to contribution.* Although a creditor of a corporation may, after judgment against it and the return of execution unsatisfied, seek satisfaction of his judgment by creditor's bill against a single delinquent stockholder, yet the latter may file his cross-bill, obtain a discovery of the other stockholders, and bring them before the court and enforce contribution from all who are alike delinquent.

2. SAME—*conflict of laws—liability depends upon the laws of the State in which the corporation was organized.* The relations between a corporation and its members depend upon the law of the place where the corporation is organized, and the liability of stockholders of a corporation of another State must be determined by the laws of such State and by the courts of that State.

3. SAME—*of corporations of other States—jurisdiction of courts of this State to determine liability.* The courts of this State have no jurisdiction of a creditor's bill to wind up the affairs of an insolvent corporation of another State, and to determine the liability of its stockholders who may reside in this State, for unpaid stock. On such a bill no discovery can be had in this State against the non-resident corporation, nor can any account be taken of its indebtedness, nor can any decree be taken winding up its affairs and apportioning its indebtedness to the solvent delinquent stockholders.

4. SAME—*liability to creditors of corporations of other States—how determined and enforced.* A creditor of an insolvent corporation, organized under the laws of a another State, must first seek a remedy in the courts of such State, and there have authoritatively determined the respective relations of the creditors and stockholders of the corporation toward the corporation and toward each other, and then, if it shall become necessary, their rights as respects stockholders domiciled in this State may be enforced in our courts.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

Certain persons signed articles of incorporation, bearing date June 15, 1881, in which they declare that they associate themselves under an act of the legislature of Michigan, entitled "An act to revise the laws providing for the incorporation of companies for mining, smelting and manufacturing iron, copper, silver, mineral coal and other ores or minerals, and to, fix the debts and liabilities of such corporations," approved May 11, 1877. They declare the name of the corporation to be the "Chicago Mining Company;" that it was formed for the purpose of mining, smelting and refining iron, silver, lead and copper ores and minerals, and more particularly for mining iron ore, upon a parcel of land in the city of Negaunee, county of Marquette and State of Michigan; that the capital stock should be $500,000, in 20,000 shares, of $25 each; that the amount paid in was $50,000, which was paid by the assignment by Joseph F. Stevens, to the company, of a lease of its mining lands in Negaunee, Michigan; that the names of its stockholders, their residences, and number of shares held by each of them, were as follows: John N. Glidden, of Cleveland, State of Ohio, owns of said capital stock 3000 shares; William Sturges, of the city of Chicago, State of Illinois, owns 3000 shares; Joseph F. Stevens, of the city of Negaunee, State of Michigan, owns 4000 shares; William S. Calhoun, of said city of Negaunee, owns 4000 shares; Edward Breitung, of said city of Negaunee, owns 1000 shares; James F. Foley, of said city of Negaunee, owns 1000 shares; John Q. Adams, of said city of Negaunee, owns 1000 shares; Henry M. Atkinson, of said city of Negaunee, owns 1000 shares; Joseph M. Gannon, of said city of Negaunee, owns 500 shares; Louis D. Cyr, of said city of Negaunee, owns 250 shares; Thomas M. Wells, of said city of Negaunee, owns 250 shares; Daniel F. Wadsworth, of Ishpeming, in said State of Michigan, owns 1000 shares; that the business office of the company should be in Negaunee, Michigan, and its business should be carried on in said county of Marquette, Michigan; that there

should be seven directors, one of whom should be president and secretary, and a treasurer; that John N. Glidden, William Sturges, Joseph F. Stevens, William S. Calhoun, James F. Foley, John Q. Adams and Daniel F. Wadsworth were directors for the first year; that the corporation should continue in existence ten years.

The first stockholders' meeting was held June 22, 1882, and at that meeting William Sturges was elected president. Other corporate officers were also elected, and an agent was appointed and instructed as to proceeding with the mining business of the corporation. On the next day (June 23) certificates of stock numbered 18, 19 and 20, of 1000 shares each, were issued to William Sturges, and they were afterwards endorsed with assignments by William Sturges to John V. Farwell. On the stubs of these certificates, as also on the stubs of three other certificates of stock for like amounts issued to William Sturges, were written the words "in trust," bearing date June 25, 1881, and on that date a certificate of stock numbered 35 was issued to John V. Farwell, for 3000 shares. This was in lieu of the three certificates of 1000 shares each issued to Sturges, and assigned by him to Farwell. When these certificates were delivered to Farwell does not clearly appear, though they were delivered some time after the last named date.

It is contended by counsel for Farwell, and he so testified, that these certificates of stock were simply pledged to him to secure indebtedness of Sturges, and that he accepted them on pledge, believing, in good faith, that they were fully paid for to the corporation. It is contended on behalf of appellee, first, that Farwell was an original subscriber for the stock, through Sturges, his trustee; and second, that if he was not, he accepted the stock with notice that only two dollars and a half on the share had been paid, and that he held himself out to the world as owner of the stock, having been elected director and president of the company, respectively. Farwell denies that he ever held himself out to the world as owner of

the stock, and denies that he ever accepted and qualified as either director or president of the company.

Various provisions of the statutes of Michigan, under which the corporation was organized, and of other statutes of that State claimed to be obligatory upon the corporation and its shareholders, relating to the liability of shareholders for unpaid stock, the mode of enforcing such liability, and the mode of transferring shares of stock and the consequent liability, were read in evidence and are copied in the record; and it is contended by counsel for Farwell, and the Appellate Court so held, that the remedy thus provided by statute for collecting the balance due on unpaid shares of stock is exclusive of all other remedies, and so is a denial of that sought here. It is also contended by counsel for Farwell, that being a *bona fide* pledgee of stock, without notice that it was unpaid, he is protected from all liability on account of its possession.

Daniel F. Wadsworth was a director in and he was also treasurer of the corporation, from its organization until July 7, 1883. He kept no books as treasurer, but carried the account of the transactions of the corporation in the private books of the bank, whereof he was part owner and manager. He was thoroughly familiar with all the business and transactions of the bank, and he remained the owner of 1000 shares of the stock of the corporation until after a period when he says it became insolvent and ceased to do business, and then transferred 900 of them to a clerk under him, for a nominal consideration, only. Wadsworth did a banking business with Harvey Diamond, at Negaunee, Michigan, under the firm name of D. F. Wadsworth & Co., from 1881 until in 1883. After the organization of the Chicago Mining Company, and before June 9, 1883, that company became indebted for advances to the firm of D. F. Wadsworth & Co., for which, on the last named date, they obtained judgment for $14,590.79 in the circuit court of Marquette county, Michigan. Execution was issued upon that judgment and levied upon certain property

of the corporation, which was sold for a sum which reduced the amount due on the judgment to $12,363.29. On the 9th of November, 1883, William Sturges filed a bill in chancery in the circuit court of Marquette county, Michigan, against the Chicago Mining Company, Daniel F. Wadsworth, Harvey Diamond, and others, to review and set aside this judgment and to settle the affairs of the corporation. The appearance of the defendants was entered, a receiver was appointed, and the suit is still pending in that court. Suit was commenced by Wadsworth and Diamond, on the record of their judgment in the circuit court of Marquette county, Michigan, against the Chicago Mining Company, in the circuit court of Cook county, to the November term, 1883, of that court. The Chicago Mining Company subsequently appeared and pleaded to the action, and judgment was rendered therein, in favor of the plaintiffs, on the 23d of January, 1886. Execution was issued upon the judgment, which was afterwards returned by the sheriff unsatisfied.

The present bill was filed on the 9th day of November, 1886. It makes John V. Farwell and David Irwin defendants; but since the circuit court dismissed the bill as to Irwin, it is unnecessary to notice any allegations affecting him. The bill is a creditors' bill, and seeks to enforce payment of the amount of complainants' judgment from Farwell and Irwin, because of the unpaid stock held by them. Farwell and Irwin were personally served with summons; but the sheriff returned that the Chicago Mining Company could not be found in his county. Thereupon there was filed an affidavit that the Chicago Mining Company was non-resident, and notice was given it by publication. The Chicago Mining Company did not enter its appearance and make any defense, and decree was entered against it *pro confesso.* On hearing, the court decreed against Farwell, in conformity with the prayer of the bill. Farwell appealed from that decree to the Appellate Court for the First District, and that court reversed the decree of the

circuit court and remanded the cause, with direction to dismiss the bill. This appeal is prosecuted by Young and others, volunteer assignees in bankruptcy of D. F. Wadsworth & Co., who were substituted in the record for D. F. Wadsworth & Co. as complainants.

Messrs. DOOLITTLE, McKEY & TOLMAN, for the appellants:

A judgment creditor of an insolvent corporation may proceed, by creditor's bill on his own judgment, against the corporation, and one or more of the stockholders less than the whole, to recover the amount of his debt, without an account being taken of other indebtedness, without bringing in all the stockholders for contribution and without winding up the corporation. *Halch* v. *Dana,* 101 U. S. 210 ; *Oglevie* v. *Insurance Co.* 22 How. 380 ; *Marsh* v. *Burroughs,* 1 Wood, 468 ; *Bartlett* v. *Drew,* 57 N. Y. 587 ; *Brundage* v. *Silver Co.* 12 Ore. 322 ; *Pierce* v. *Construction Co.* 38 Wis. 253 ; *Ervin* v. *Oregon R. and N. Co.* 20 Fed. Rep. 577 ; *Hollingshead* v. *Woodward,* 35 Hun, 410 ; *Pettibone* v. *McGraw,* 6 Mich. 441 ; *Clapp* v. *Peterson,* 104 Ill. 35 ; *Hickling* v. *Wilson,* id. 54 ; *Patterson* v. *Lynde,* 112 id. 204 ; Wait on Insolvent Corp. sec. 78 ; Cook on Law of Stocks, sec. 206 b, and note 3, p. 192 ; 1 Morawetz on Corporations, sec. 315 ; 2 id. secs. 864, 821.

Nor does it make any difference that the corporation is of another State. *Bartlett* v. *Drew,* 57 N. Y. 587.

Mr. GEORGE F. WESTOVER, for the appellee:

No action will lie against a stockholder of an insolvent corporation to enforce payment of unpaid stock, unless a court of equity having jurisdiction of the corporation shall have taken an account of all of its assets and liabilities, and shall have ascertained the amount necessary to be paid by each stockholder to cancel its debt. *Insurance Co.* v. *Moore,* 84 Ill. 576 ; *Insurance Co.* v. *Gulick,* 102 id. 41 ; *Patterson* v. *Lynde,* 112 id. 205 ; *Telegraph Co.* v. *Gray,* 122 id. 630.

The statute of Michigan provides that subscribers for stock shall be liable to pay calls made by the board of directors, and therefore there can be no action to enforce unpaid subscriptions without either an assessment and call by the company, or an order of some court of competent authority. *Adler* v. *M. P. B. M. Co.* 13 Wis. 63; *Scovill* v. *Thayer,* 105 U. S. 155.

The laws of a foreign State operate beyond its territorial limits only *ex comitate.* The courts of a State where the laws of such a foreign State are sought to be enforced, will use a sound discretion as to the extent and mode of that comity. They will not permit their tribunals to be used for the purpose of affording remedies which are denied to parties in the jurisdiction of the State that enacted the law, and which tend to operate with hardship on their own citizens and subjects. *Rice* v. *Merrimac H. Co.* 56 N. H. 114; *Erickson* v. *Nesmith,* 4 Allen, 233; 15 Gray, 221; *Patterson* v. *Lynde,* 112 Ill. 196; *May* v. *First Nat. Bank,* 122 id. 551.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Although a creditor of a corporation may, after judgment against it and return of execution by the sheriff unsatisfied, seek satisfaction of his judgment by creditor's bill against a single delinquent stockholder of the corporation, (*Hatch* v. *Dana,* 101 U. S. 205,) yet in such case the delinquent stockholder may file a cross-bill in the case, obtain a discovery of the other stockholders, bring them before the court, and enforce contributions from all who are alike delinquent as himself. (*Hatch* v. *Dana, supra;* Beach on Private Corporations, sec. 700, and authorities cited in note 4; Cook on the Law of Stock and Stockholders, sec. 206.) But it is manifest this is impossible except in the State where the corporation has its existence and most of the stockholders reside. No discovery can be obtained in this State against the Chicago Mining Company, no account can be taken of its indebtedness, and

no decree can be rendered winding up its affairs and appor-
tioning its indebtedness to the solvent delinquent stockholders
by our courts, for the simple reason that it is beyond the jur-
isdiction of our courts, and no orders made here can be oblig-
atory upon it or its property in Michigan, or in any other
State than this.

The rights sought to be passed upon and determined in this
proceeding are those which arise from the relations between a
corporation and its members, and depend upon the law of the
place where the corporation was organized. As was said in
*New Haven H. N. Co.* v. *Linden Springs Co.* 142 Mass. 353:
"The liability which the stockholders are alleged to be under
to the corporation and its creditors has little analogy to a debt
due, according to the generally recognized principles of law.
It is of a peculiar character, involving the organic law by
which the corporation is created, and requiring local adminis-
tration." And in the present case, if we shall undertake to
adjudicate upon the relations between the stockholders and
the corporation and its creditors, we shall have to determine
whether purchasers or pledgees of unpaid shares of stock in
corporations organized under the laws of Michigan, relating
to mining corporations, may be held liable to the creditors of
such corporations, and if so, under what restrictions and to
what extent, and whether creditors of such corporations are
entitled to collect their debts from the holders of its unpaid
stock as if such holders were general debtors of the corpora-
tion, or whether the only remedy in such case is limited to a
forfeiture and sale of the shares of unpaid stock.

These questions have not been authoritatively decided by
the courts of Michigan, and from the intimation in *Young* v.
*Erie Iron Co.* 65 Mich. 111, the latter question is one about
which there are differences of opinion in the minds of the
members of its Supreme Court. It is manifest that if we
were to undertake to decide these questions, it is possible that
this court and the Supreme Court of Michigan might reach

opposite conclusions upon them, and the consequences of that result would inevitably be unjust to either creditors or some of the stockholders, or both.    Suppose that we were to here hold that appellee is liable, as prayed in the bill, and direct that a decree be entered accordingly; that he then goes to Michigan and files a bill for contribution against his co-stockholders, and the courts of that State hold that, under the statutes affecting this corporation, there is no personal liability for unpaid shares of stock, and that the only remedy for unpaid shares of stock is forfeiture and sale of shares.    Necessarily, he would be without remedy, and thus our decision would hold our citizen to a more onerous responsibility because of his ownership of shares of stock, than would be that of the citizen of the State under whose laws the corporation was organized and transacted all of its business, for his like ownership of precisely the same class of shares of stock.

It is, moreover, obvious, that to allow these creditors to leave Michigan, the home of the corporation, and of many of its stockholders, and of themselves, without attempting to collect their judgment of the stockholders there, and to have their rights as respects the stockholders authoritatively determined under the statutes of that State governing alike the corporation, its stockholders and creditors, and to come here and enforce payment of their judgment against a stockholder of this State, would be to favor the citizen of Michigan over the citizen of our own State.    D. W. Wadsworth, the senior member of the firm of D. W. Wadsworth & Co., is indebted, or was indebted when the indebtedness for which this suit is brought was incurred, (and he has not since paid it,) to the corporation, for unpaid shares of stock, more than the amount of the indebtedness here sought to be collected.    It is not possible that there can be any reason why he should not pay this indebtedness, and yet that appellee should pay his indebtedness of precisely the same character, or that appellee should first make the payment in full, and then seek contribution from

Wadsworth. We are aware that his insolvency, and that of some of the other stockholders in Michigan, is urged in argument as a reason why he and they were not made to pay; but that rests upon assertion, only, and is not an element in support of this proceeding. If this bill had been filed in Michigan, that question could have been considered on cross-bill, the fact of solvency could have been ascertained with regard to all the stockholders, and the just proportion of the corporate indebtedness that should be borne by the solvent stockholders determined by decree of the court; but such decree could be entered in no other jurisdiction, because, as before shown, in no other jurisdiction can a decree for an account and winding up of the affairs of the corporation be rendered that would be conclusive upon the corporation, its stockholders and creditors.

Since any decree which we might approve in this case could not do complete justice to those liable to be affected by it, and might do injustice to some, we decline to pass upon and determine the questions stated *supra* and discussed in argument. The appellant must first seek a remedy in the courts of the State of Michigan, and there have authoritatively determined the respective relations of creditors and stockholders of this corporation towards it and towards each other, and then, if it shall be necessary, their rights as respects stockholders domiciled in this State may be enforced in the courts of this State. *Lynde et al.* v. *Patterson et al.* 112 Ill. 196; *New Haven H. N. Co.* v. *Linden Springs Co. supra; Halsey* v. *McLean,* 4 Allen, 434; *K. and E. R. R. Con. Co.* v. *T., S. & W. R. R.* 135 Mass. 134; *Erickson* v. *Nesmith,* 15 Gray, 221; *Aultman's Appeal,* 98 Pa. St. 505; *Gregory* v. *N. Y., L. E. & W. R. R.* 40 N. J. Eq. 38; *Rice* v. *M. H. Co.* 56 N. H. 114; *May* v. *Black et al.* 77 Wis. 101.

This reaches the same result, though through different reasoning, as that reached by the Appellate Court. Its judgment must therefore be affirmed.

*Judgment affirmed.*