In re Estate of Elvira J. Parks, Deceased.
M. J. Pufahl, as Receiver of the Austin National Bank of Chicago, Appellant, v. Estate of Elvira J. Parks, Deceased, Appellee.

Gen. No. 38,123.

Opinion filed December 27, 1935.

GLENN, SCHWARTZ, REAL & BROWNING, of Chicago, for appellant; HAROLD E. BAILY, of Chicago, of counsel.

CASTLE, WILLIAMS & MCCARTHY, of Chicago, for appellee; FRANZ W. CASTLE and JOSEPH J. WITRY, of Chicago, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment entered in the circuit court of Cook county, denying the claim of M. J. Pufahl, as receiver of the Austin National Bank of Chicago, against Philip W. Huston also called Houston, and Frank M. Pray, as executors of the estate of Elvira J. Parks, deceased.

The cause of action arose out of an assessment by the comptroller of currency of the United States against all shareholders of the Austin National Bank of Chicago, to enforce the superadded liability of the shareholders, including Philip W. Huston and Frank M. Pray, as executors, who are the owners and holders of 12 shares of the capital stock of the Austin National Bank.

The circuit court found that Philip W. Huston and Frank M. Pray, as executors of the estate of Elvira J. Parks, deceased, were liable to M. J. Pufahl, as receiver, for the sum of $1,200 plus interest, to the extent of the property and funds in their hands as such executors.

The circuit court further found that the claim did not accrue and was not filed in the probate court until after the one-year period for filing claims had expired and that consequently, claimant was barred from sharing in the funds of the estate, except as to uninven-

toried assets. M. J. Pufahl, as receiver, appealed from the entire judgment.

The theory of M. J. Pufahl, as receiver, is that the liability of the executors of the estate of Elvira J. Parks, deceased, for the stock assessment levied against them as the owners and holders of 12 shares of stock, arises by virtue of section 5152 of the Revised Statutes of the United States (12 U. S. C. A. Sec. 66) and binds them the same as the deceased would be bound if living, and is not such an ordinary claim as would be barred by chapter 3, section 70, Ill. State Bar Stats. 1935, ¶ 71.

It is further contended by claimant that section 71 of the Administration of Estates Act was not designed to bar a claim arising by virtue of the federal statute which was not absolute and which did not accrue until after the one-year period for filing claims had expired.

Elvira J. Parks, who owned these shares of stock in her lifetime, died March 20, 1928. Philip W. Huston and Frank M. Pray, as executors, are now the owners and holders of the 12 shares of capital stock of the Austin National Bank of Chicago at the par value of $100 each.

On the 30th day of March, 1931, the comptroller of currency of the United States declared and adjudged said Austin National Bank of Chicago to be insolvent and closed said bank. Subsequently, on April 6, 1931, M. J. Pufahl was appointed receiver of said bank by the comptroller of currency of the United States.

May 21, 1931, the comptroller of currency in order to pay the debts of the Austin National Bank of Chicago made an assessment upon all the stockholders of said bank equal to 100 per cent of the par value of the stock of said bank owned by said stockholders, including an assessment of $1,200 against the defendants, Philip W. Huston and Frank M. Pray, as executors of the last will and testament of Elvira J. Parks, and the said comptroller of currency demanded of the said

Philip W. Huston and Frank M. Pray the payment of said stock assessment as aforesaid, together with interest at the rate of five per cent per annum from June 29, 1931, and the said executors refused to pay M. J. Pufahl, as receiver, the amount due or any part thereof.

On May 21, 1931, the said comptroller of currency directed M. J. Pufahl, as receiver of the Austin National Bank of Chicago, to take the necessary proceedings to enforce the assessment levied against the capital stock of said bank.

On May 17, 1928, letters of administration were issued to Philip W. Huston and Frank M. Pray by the probate court, in a proceeding pending therein entitled, "In the matter of the Estate of Elvira J. Parks, deceased." It was stipulated that an inventory and supplemental inventory were filed in the probate court of Cook county one year from the date of issuance of letters testamentary, and that the said estate is still open and there has been no final distribution.

On September 1, 1933, M. J. Pufahl, as receiver, filed his claim against the estate of Elvira J. Parks in the probate court for the sum of $1,327.17, being $1,200 assessment plus interest at the rate of five per cent to date of filing said claim.

The only point of controversy involved here is whether the comptroller of the currency by levying the assessment against the stockholders is in any different position than any other creditors filing their claims against the estate.

Chapter 3, section 70 of the Illinois Revised Statutes, 1935, ¶ 71, which is applicable to this question, reads as follows:

"All claims and demands of whatever class not exhibited to the court within one year from the granting of letters as aforesaid shall be forever barred as to property and estate of the deceased which has been inventoried or accounted for by the executor or admin-

istrator; . . . all claims not exhibited to the court prior to the date so fixed shall be forever barred as to the property and estate listed in such inventory, and the amount remaining due on all claims exhibited to the court on or prior to the day so fixed upon as aforesaid, including those filed within one year from the granting of letters, shall be paid *pro rata* out of such subsequently inventoried estate. . . ."

It is contended by the claimant that the Federal Statute (section 66 of Title 12, United States Code Annotated) creates a special class of claims which is charged as a lien upon the estate of the deceased stockholder, and which is not governed by the laws of Illinois relative to the administration of estates of decedents.

It may well be admitted that the validity of the claim cannot be affected in any way by the laws of the State, but as to the method of its enforcement, it is governed by the practice prescribed by the State laws, the same as any other claimant. We are inclined to believe this exact question was settled by the Supreme Court of the United States on February 4, 1935, in the case of *Forrest v. Jack*, 294 U. S. 159, on page 163, referring to the said section 66 of Title 12, United States Code Annotated, wherein the court said:

"In the absence of federal enactments relating to procedure for enforcement of the liability imposed by Section 66, collection is to be made in accordance with state laws governing claims against estates of deceased persons, at least to the extent that such laws are not inconsistent with enforcement of the liability imposed by national authority." And again the court said:

"There is no suggestion that the laws of the State of Utah discriminate against or are inadequate for the just and convenient enforcement of liability imposed."

In other words, this liability which was created by the comptroller of the currency more than one year

after the time when claims could be filed under the law of Illinois is treated the same as any other claim and we think rightfully so. No discrimination is made against it nor can we see any reason why it should be preferred over other claims. No exception in its favor is made in any law and we do not see why we should attempt to make one.

We are of the opinion that the finding of the circuit court is correct and its order and judgment are, therefore, affirmed.

*Order and judgment affirmed.*

HALL, P. J., and HEBEL, J., concur.